| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | IN THE |
| vs. | * | UNITED STATES |
| SONYA BANNISTER BURFORD | * | DISTRICT COURT |
|    Defendant | * | FOR MARYLAND |
| | * | Case No. **8:21-cr-00087-PJM** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## SENTENCING MEMORANDUM

### INTRODUCTION

It is respectfully submitted that neither defense counsel nor Sonya Burford underestimate nor downplay the nature, severity, and gravity of the crime that the Defendant plead guilty to, 18 U.S.C. § 641 (Theft of Government Property). However, it is respectfully requested that this Court consider, along with the U.S. Sentencing Guidelines, the following factors and analysis:

### Sentencing under *Booker*

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holdings in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) apply to the Federal Sentencing Guidelines. *See United States v. Booker*, 543 U.S. 220, 244 (2005). Given the mandatory nature of the Sentencing Guidelines at the time, the Court found no relevant distinction between the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines in the cases before the Court. *Id*. at 235. Accordingly, reaffirming its holding in *Apprendi*, the Court concluded that "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts

established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id*. at 244.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. 3553(b)(1), or which rely upon the Guidelines as mandatory in nature, 18 U.S.C. 3742(e), are incompatible with its Sixth Amendment holding.  *Booker*, 543 U.S. at 244. Accordingly, the Court severed and excised those provisions, making the Guidelines effectively advisory. Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. Sec. 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see  3553(a). Booker, 125 S. Ct. at 757.  Thus, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. Sec. 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2.  Section 3553(a)(2) states that such purposes are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 3553(a) further directs sentencing

Courts are to consider the following factors:

1) the nature and circumstances of the offense and the history and characteristics of the defendant (Sec. 3553(a)(1);

2) the kinds of sentences available (Sec. 3553(a)(3);

3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (Sec. 3553(a)(6); and

4) the need to provide restitution to any victims of the offense. (3553(a)(7). Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. Sec. 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation (emphasis added).

Under 18 U.S.C. Sec. 3661, *no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as not ordinarily relevant to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. Sec. 5H1. See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, F. Supp. 2d , 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS

3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses  he was 17  and noting that in Roper v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and Sec. 3553(a) make clear that courts may no longer uncritically apply the guidelines.  Such an approach would be inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the Sec. 3353(a) factors, many of which the guidelines either reject or ignore.  United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.).  As another district court judge has correctly observed, any approach which automatically gives heavy weight to the guideline range comes perilously close to the mandatory regime found to be constitutionally infirm in Booker.  United States v. Jaber, F. Supp. 2d, 2005 WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.).  See also United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence), 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

"Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range.

If the majority thought otherwise if it thought the Guidelines not only had to be considered (as the amputated statute requires) but had generally to be followed its opinion would surely say so". Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part).

Likewise, if the remedial majority thought the guidelines had to be given heavy weight, its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in 3553(a), these statutory sentencing factors should generally trump the guidelines. See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range.

**Personal Life History and Character of Sonya Burford**

The Presentence Investigation Report prepared by Ms. Ashley Crouch from U.S. Probation depicts an accurate rendition of Ms. Burford's personal life history. However, I would like to supplement said report with this sentencing memorandum.

Sonya Burford was born in a small town in Pennsylvania in 1967. She grew up with her five siblings and had a relatively happy childhood. She was a star athlete in high

school but she was forced to enter the work force due to her father being unemployed. She would provide part of her meager earnings to her parents to assist them in supporting the family. She would often work two or three jobs until she was able to find a decently paid job with Greyhound.

In 1989, while working at Greyhound, she met and fell in love with her husband, Webster Burford. They dated for three years until they formally got married in 1992. They were living in Virginia at the time, which did not require a couple to have a blood test prior to marriage. Ms. Burford agreed and they did not conduct any blood test prior to their marriage.

Unfortunately, Mr. Burford did not inform his wife that he was HIV+. Thanksgiving week 1992, Ms. Burford became very ill and broke out with shingles. She went to her doctor who confirmed her biggest fear, she contracted HIV. This greatly impacted her both physically and mentally. She hid the illness from her close-knit family and was now stuck in a loveless and dead marriage. She was eventually alienated from her family. Most devastating was that her dream of having children and a family of her own was eviscerated by her illness and husband's betrayal.

The diagnoses and betrayal also severely affected her financial situation. Her husband would secretly spend his days in the mall spending money when he was supposed to be in work. Ms. Burford tried her best to keep them financially afloat but they were racking up serious debt. Mr. Burford was eventually hospitalized due to his HIV and there were significant medical bills. While he was in the hospital, a social worker assisted him in signing up for social security benefits and notified them that

someone would follow-up with him every year to assess his condition. Mr. Burford then passed away and Ms. Burford only contacted her bank to notify them of his death. Her husband's social security benefits continued to come into the account and she used it to pay all the bills her husband left her. She did not notify social security as nobody from the administration followed up with her regarding her husband's condition. She realizes that it was wrong for her to keep the money and she is extremely remorseful for her inaction.

Ms. Burford was and is living a life that she describes as unfulfilling. She was born and raised in a large and vibrant family. She now has no children, no relationship and no true friends due to her continued illness. Luckily, she was able to find some solace in finding God and joining the Christian Church. She respectfully requests that this Honorable Court show mercy on her and allow her time to make the required restitution payments.

### JUSTIFICATION OF DOWNWARD VARIANCE

The "overarching provision" of 21 U.S.C. § 846, 841 (b)(1)(A) & 8 U.S.C. § 1326(b)(1), is to impose a sentence sufficient, but not greater than necessary to meet the goals of sentencing established by Congress.  Kimbrough vs. United States, 128 S.Ct. 558, 570 (2007).  The statue, in addition to requiring the sentencing court to consider the nature and circumstances of the offense, requires the Court to consider the history and characteristics of the Defendant.  The unique emotional and physical ailments suffered by someone in Ms. Burford's situation surely fall under circumstances within this category and are deserving of considerable weight.  Ms. Burford is hopeful that the Court will weigh several of the hardship and factors that she has enumerated herein.

When this Court weighs these individual considerations, the Guidelines produce a sentence range that is not reflective of what Defendant did. Therefore, Defendant respectfully submits that it is appropriate to impose a downward variance.

Respectfully submitted,

*/s/ Mark E. Sobel*
Mark E. Sobel, Esquire
Law Offices of James E. Crawford, Jr. & Associates
999 Corporate Boulevard, Suite 100
Linthicum, Maryland 21227
(443) 709-9999
mark@jamescrawfordlaw.com
Attorney for Defendant

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 15th day of July, 2021, a copy of the foregoing Sentencing Memorandum, was served via e-filing to the Office of the United States' Attorney, District of Maryland.

*/s/ Mark E. Sobel*
Mark E. Sobel, Esquire